UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOHN MCDONALD, *pro se*,

              Petitioner,

    -against-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

              Respondent.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
08-CV-965 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* petitioner John McDonald is currently serving an indeterminate prison sentence of sixteen years to life following his conviction in New York State Supreme Court, Queens County, for burglary in the second degree. Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends that he was denied due process of law and a fair trial because of jury misconduct and that the state court's decision denying his request to set aside the verdict was contrary to and involved an unreasonable application of established federal law, as determined by the Supreme Court of the United States. For the reasons set forth below, the petition is denied.

**I.    Summary of Facts**

    **A.    Background**

Phyllis Glenn's residence in Far Rockaway, Queens was robbed at some time between 11:00 p.m. on August 5, 2003 and 8:45 a.m. the next morning. (Tr. 447-50; Pet. ¶ 9.) The perpetrator stole $300 in bills and a "small, dingy, crumpled, irregularly-shaped, purple-striped, plastic zip-lock bag containing change" from Ms. Glenn's purse. (Affidavit and Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Resp't Aff. In Opp'n") ¶ 3; Tr. 448-50.) Shortly before 8:00 a.m. on the same morning, Shifi Bloom found a man standing

1

inside the foyer of her residence, also in Far Rockaway. (Tr. 332-39; Pet. ¶ 6-7.) Ms. Bloom told the man she was going to call the cops, and he left the house. (Tr. 338-39; Pet. ¶ 7.) Ms. Bloom called the police and, when they arrived at the scene, she gave them a description of the man, which Asher Schoor, the Bloom's next-door neighbor, overheard. (Tr. 340-42, 612-13; Pet. ¶ 8.) While out driving, Mr. Schoor saw a man that matched the description and notified Ms. Bloom. (Tr. 614-15; Pet. ¶ 8.) Thereafter, Ms. Bloom and the responding police officer drove to the area, and Ms. Bloom identified petitioner as the man she had seen standing in her foyer. (Tr. 342-45, 488; Pet. ¶ 8.) The officer found petitioner carrying the same bag of coins that had been stolen from Ms. Glenn earlier that morning. (Tr. 450-51, 490-92; Pet. ¶ 9.) Petitioner was charged with two counts of burglary in the second degree, one relating to the Glenn incident and one relating to the Bloom incident (N.Y. Penal Law § 140.25[2]). Petitioner was also charged with criminal possession of stolen property in the fifth degree, relating to the Bloom incident (N.Y. Penal Law § 165.40), and criminal trespass in the second degree, and petit larceny, both relating to the Glenn incident (N.Y. Penal Law § 140.15; N.Y. Penal Law § 155.25).

### B. Procedural History

At trial, the jury found petitioner guilty of one count of burglary in the second degree, relating to the Bloom incident, and acquitted petitioner of all other counts. (Tr. 752; Pet. ¶ 17.) On July 26, 2004, pursuant to section 330.30(2) of the New York Criminal Procedure Law, petitioner moved for a court order setting aside the jury's verdict and granting petitioner a new trial, on the ground that jurors had engaged in premature deliberations. (Pet. ¶ 19.) Petitioner submitted an affidavit from his wife, Ruthe McDonald, who stated she overheard three jurors and an alternate juror engaged in a conversation while approaching the courthouse on the same morning the jury delivered its verdict. (*Id.*) Ms. McDonald stated that the alternate juror stated, "'there was a possibility of the bag being found while leaving the first house,'" and two of the

2

jurors replied "that they needed to see what everyone else believed." (*Id.*) Ms. McDonald also stated she heard one of the jurors say "'that they [the jurors] should be finished before lunch; that it shouldn't take them long, as long as they did not deadlock,'" while inside the courthouse. (*Id.*)

Additionally, petitioner filed supplemental motion papers, including an affidavit by John L. Brown, a private investigator. (Pet. ¶ 21.) Mr. Brown stated in his affidavit that he interviewed juror Janak Datt, who informed him that, during the trial, and prior to deliberations, another female juror "'was constantly talking about the case to everyone.'" (*Id.*) Mr. Brown also stated that alternate juror Rosemarie Kelly told him that, during the trial, another female juror approached her and said, "'[W]hat is petitioner doing out at that hour, he should be working, he's guilty.'" (*Id.*) Ms. Kelly added that another female juror had referred to the same juror who had approached her, and stated that the juror "'never stops talking about the case.'" (*Id.*) The state opposed petitioner's motion, arguing that the juror's statements before deliberations were vague and failed to show that petitioner suffered any prejudice. (*Id.* ¶ 22.)

On October 7, 2004, the court found that the alleged comment concerning the plastic bag was "non-prejudicial" and "merely academic," while the comment concerning the length of time it might take the jury to reach a verdict was "innocuous" and not prejudicial. *People v. McDonald*, No 1638/03, slip op. at 3 (N.Y. Sup. Ct. Queens Co. Oct. 7, 2004). However, the court ordered a hearing on the alleged juror statements made regarding petitioner's guilt. *Id.* At the January 13, 2005 hearing, only juror Rosemarie Kelly testified. Ms. Kelly stated that when the female juror told her that petitioner was guilty, she responded, "'How can you say that? You don't know that.'" (Resp't Aff. In Opp'n ¶ 14.) Additionally, Ms. Kelly stated that she told the juror that she could not make snap judgments concerning the case. (*Id.*) Ms. Kelly stated that her verdict was not affected by the juror's statement. (*Id.*)

3

The court denied petitioner's motion on February 8, 2005, crediting Ms. Kelly's testimony. *People v. McDonald*, No 1638/03, slip op. at 4 (N.Y. Sup. Ct. Queens Co. Feb. 5, 2005). The court found that the juror's misconduct did not affect Ms. Kelly's verdict. *Id*. The court also noted that, despite the unknown juror's comment asserting petitioner's guilt, the juror had reached a different conclusion after deliberations, as petitioner was acquitted of all counts relating to the Glenn incident. *Id*. The court determined that the juror had not formed a profound opinion regarding petitioner's guilt, and that her statements were better described as "'non-extensive terse asides.'" *Id*. The court then sentenced petitioner, as a persistent violent felony offender, to a prison term of sixteen years to life. (Pet. ¶ 27.)

Petitioner appealed his conviction on October 10, 2005, contending that "the court erred when it refused to set aside the verdict upon the post-verdict disclosure that a juror, in mid-trial, had discussed the evidence with another juror and declared that petitioner was guilty." (*Id*. ¶ 28.) The New York Supreme Court, Appellate Division, Second Department ("Appellate Division") affirmed petitioner's conviction on May 29, 2007, holding that the state court's determination was entitled to great deference and was also supported by the record. *People v. McDonald*, 40 A.D.3d 1125 (2d Dep't 2007). The Appellate Division noted that "there was no evidence presented suggesting that [the] comments were made to any other jurors" besides Ms. Kelly, and that petitioner failed to satisfy his burden because he never identified the juror who made the offending comments. *Id.* Finally, the court noted that "the fact that the jury acquitted the defendant of three counts in the indictment indicated that the unidentified juror had not predetermined the defendant's guilt." *Id.* Petitioner sought leave to appeal the Appellate Division's decision to the New York State Court of Appeals, but this application was denied on August 21, 2007. *People v. McDonald*, 9 N.Y.3d 878 (2d Dep't 2007).

4

Petitioner timely moved this court for a writ of habeas corpus, contending that the state court's determination that he was not prejudiced by the juror's comments was contrary to and involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. (*Id.* ¶ 32.)

**II.  Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a petitioner's federal claims on the merits. Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). According to AEDPA, federal courts review a state court's determination of a claim on the merits deferentially. 28 U.S.C. § 2254(e). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather,

the state court's application must have been "objectively reasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The range of judgments that can be deemed reasonable depend on the nature of the relevant rule. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Thus, evaluating whether the application of a rule was reasonable varies according to the rule's specificity. *Id*. Specific legal rules may have a more narrow range of interpretation, while the meaning of more general rules "must emerge in application over the course of time." *Id*. Therefore, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*.

In reviewing a *pro se*'s pleadings, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Therefore, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

## III. Discussion

### A. Petitioner's Claim

Petitioner's sole argument in his writ of habeas corpus is that the Appellate Division, in determining that he was not prejudiced by the juror's comments outside prior to deliberation, acted contrary to and involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.[1] (Pet. ¶ 32.) Specifically, petitioner argues he was denied due process of law and a fair trial because of jury misconduct and that the

---

[1] The court notes that petitioner makes no claim of actual innocence.

state court's refusal to set aside the verdict was objectively unreasonable. (Memorandum of Law in Support of Petitioner's Petition for a Writ of Habeas Corpus ("Pet'r Mem.") at 1.)[2]

Petitioner has cited numerous cases in support of his petition. However, petitioner's reliance on the majority of these cases is misplaced, as the cases do not discuss premature deliberations, but instead consider outside influence on jurors. For example, the cases address widespread publicity that caused prejudice among the jury pool, *Irvin v. Dowd*, 366 U.S. 717 (1961), heavily publicized and highly sensational criminal trials, *Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Estes v. Texas*, 381 U.S. 532 (1965), prejudicial comments by the bailiff or other unknown individuals to the jurors, *Parker v. Gladden*, 385 U.S. 363 (1966); *Remmer v. United States*, 347 U.S. 227 (1954), issues related to summations, *Herring v. New York*, 422 U.S. 853 (1975), and the presence of alternate jurors during deliberations, *United States v. Olano*, 507 U.S. 725 (1993). There is a strong distinction between intra-jury communication and extra-jury influences. Specifically, "intra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences." *United States v. Sabhnani*, 529 F. Supp. 2d 384, 390 (E.D.N.Y. Jan. 14, 2008) (internal quotation marks and citation omitted) (denying motion for a new trial and hearing to investigate alleged prejudicial juror misconduct). Therefore, the cases regarding outside influences are inapplicable here.

Moreover, two of petitioner's cases, *Smith v. Philips*, 455 U.S. 209 (1982), and *Tanner v. United States*, 483 U.S. 107 (1987), which Respondent argues are the most closely related to petitioner's claim, are similarly inapplicable because they addressed jurors' personal capacity to serve on the jury, and did not address issues of premature jury deliberations or the deliberation

---

[2] Petitioner raised his claim on direct appeal, and it was denied on the merits. This court recognizes that it has jurisdiction over petitioner's claim because it was properly exhausted in state court. *See McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002).

process in general. Furthermore, petitioner's citations to other federal cases and state court cases are inapplicable because the standard requires that the law be "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). In sum, the specific holdings in the cases cited by petitioner are inapplicable to the circumstances here.

### B. Clearly Established Supreme Court Precedent

Because there is no specific precedent by the Supreme Court regarding premature deliberations, this court will apply the general notion of due process and a fair trial to petitioner's claim. *See, e.g.*, *Jamison v. Girdich*, 2005 WL 2338660, at *6-7 (S.D.N.Y. Sept. 26, 2005) (applying the general notion of a fair trial to a complaint of juror misconduct); *see also Brown v. Greiner*, 2003 WL 22964395 (E.D.N.Y. Oct. 2, 2003). The application of the general notion of a fair trial is far from precise. The meaning of a general standard emerges through its application over time and "applying a general standard to a specific case can demand a substantial element of judgment." *Yarborough*, 541 U.S. at 664. As a result, courts are afforded great leeway when applying general standards and reach outcomes on a case-by-case basis. *See id*.

The general notion of a fair trial is rooted in the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI.; *see also United States v. Sabhnani*, 529 F. Supp. 2d 384, 390 (E.D.N.Y. Jan. 14, 2008). "'It is a generally accepted principle of trial administration that jurors must not engage in discussions of a case before they have heard both the evidence and the court's legal instructions and have begun formally deliberating as a collective body.'" *Sabhanini*, 529 F. Supp. 2d. at 390 (quoting *United States v. Cox*, 324 F.3d 77, 86 (2d Cir. 2003)). Premature deliberations can present danger, "in some manner affecting or touching upon the criminal defendant's Sixth Amendment right to a fair and impartial jury." *Brown*, 2003 WL 22964395, at *13 (quoting *United States v. Bertoli*, 40 F.3d 1384, 1393 (3d Cir 1994)).

Although premature deliberations are improper, it is "not as serious as private communication, contact or tampering . . . with a juror during trial [or] . . . influence of the press upon the jury, nor does every incident of juror misconduct require [ ] a new trial." *Davis v. Woodford*, 333 F.3d 982, 1005-06 (9th Cir. 2003) (quoted in *Brown*, 2003 WL 22964395, at *13). Additionally, "when there are premature deliberations among jurors with no allegations of external influence on the jury . . . there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial." *United States v. Resko*, 3 F.3d 684, 690 (3d Cir. 1993) (quoted in *Sabhanini*, 529 F. Supp. 2d. at 391). There is a general presumption "that jurors remain true to their oath and conscientiously observe the trial court's instructions." *Sabhanini*, 529 F. Supp. 2d. at 390.

In a similar case to the one at bar, the Honorable Jack B. Weinstein, Sr. U.S. District Judge of this court, analyzed the notion of a fair trial where jurors had made statements prior to deliberation. *See Brown*, 2003 WL 22964395. In *Brown*, petitioner alleged that a juror's statement to another juror, "I know I shouldn't be saying this, but he is guilty, guilty, guilty," deprived him of a fair trial. *Id*. at *13. Judge Weinstein denied petitioner's writ of habeas corpus on this claim because "[p]remature deliberation by jurors do not . . . deprive a defendant of a fair trial. 'The important thing is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury.'" *Id*. (quoting *United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974)). Judge Weinstein noted that "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Id*.

Furthermore, Judge Weinstein noted that it is "unsurprising that at some point near the end of a trial one or more jurors will believe a defendant's guilt or innocence to have been

9

established." *Brown*, 2003 WL 22964395, at *13. Judge Weinstein recognized that courts cannot require jurors to act above and beyond what is expected of an average person, stating:

> Our criminal justice system does not contemplate that jurors will avoid forming tentative conclusions about the guilt or innocence of a defendant before all the evidence has been presented and the judge releases them to the jury room for deliberations. All that is required is that he or she keep an "open mind" and remain receptive to the parties arguments and evidence.

*Id*. Therefore, since there was no indication that the juror failed to participate in deliberations in good faith, the court found that the alleged jury misconduct did not violate the broader right of a fair trial. *Id*. at *13-14.

### C. The Alleged Jury Misconduct Did Not Violate Petitioner's Rights

Here, petitioner similarly has failed to show how the jurors' statements resulted in a different outcome than would have occurred had the jurors remained silent. As in *Brown*, there is no evidence that any juror came to a determination of guilt using any other evidence than what was presented at trial. *See Brown*, 2003 WL 22964395, at *13. Moreover, petitioner in this case was granted a post-verdict hearing, which allowed jurors to testify as to whether the other juror's comments regarding the case had influenced their judgment. *See Brown*, 2003 WL 22964395, at *13. Despite the opportunity to prove his case at the hearing, petitioner nevertheless failed to demonstrate juror bias or that he was prejudiced by any of the alleged comments made by jurors.

At the state court hearing, Ms. Kelly, one of the jurors on the receiving end of the comments, testified that the comments did not affect her judgment at all. (Pet. ¶ 14.) The state court fully credited Ms. Kelly's testimony, and this determination is entitled to a great deference. *See Rushen v. Spain*, 464 U.S. 114, 120 (1983) ("[T]he factual findings arising out of the state courts' post-trial hearings are entitled to a presumption of correctness."). Because "state courts are in a far better position than federal courts" to resolve questions of fact, the factual findings of state courts "deserve[] a high measure of deference, and may be set aside only if it lack[s] even

fair support in the record." *Id.* (internal citations and quotations omitted.) Moreover, a juror's testimony regarding premature deliberations is also afforded great deference, as "'a court should generally presume that jurors are being honest.'" *Jamison*, 2005 WL 2338660, at *8 (quoting *Cox*, 324 F.3d 77.) Therefore, the state court's crediting of Ms. Kelly's testimony is presumed correct, and there is no evidence to rebut her contentions. Indeed, her testimony is corroborated by the fact that petitioner was acquitted of all charges related to the Glenn incident, which demonstrates that the comments did not sway Ms. Kelly or any other juror to decide that petitioner was guilty as to all of the charges. Additionally, the acquittal shows that even the unknown juror who made comments had not predetermined petitioner's guilt. Although the juror declared petitioner "guilty" to other jurors, she ultimately reached a different opinion after deliberations.

Moreover, petitioner called only Ms. Kelly to testify during the hearing and did not put forth any evidence that he suffered prejudice as a result of the misconduct described in his petition. (*Id.* ¶ 21.) "Because a § 2254 petition seeks to overturn 'a presumptively valid judgment of conviction,' the petitioner bears the burden of proof throughout the habeas proceeding." *Pignataro v. Poole*, 2010 WL 2501009, at *1 (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1094 (2d Cir. 1990)). Petitioner failed to prove the alleged jury misconduct violated his right to due process and a fair trial. *See Augustine v. Walker*, 2001 WL 1860883, at *6 (N.D.N.Y. June 12, 2001) ("No evidence was presented during [the inquiry into petitioner's claim of jury misconduct], or has been submitted by [petitioner] in support of this petition that demonstrated that the jurors were not impartial in the course of their deliberations, or that he suffered any prejudice as a result of the misconduct described in his petition. . . . Since [petitioner] has failed to demonstrate that the conduct of the jury affected its verdict or otherwise

prejudiced [petitioner], the undersigned recommends this Ground be denied."), *adopted by* 98-CV-771, Docket Entry 15.

In sum, the state court's conclusion that the jurors' statements did not affect the trial is not objectively unreasonable. Therefore, the state court decision was not contrary to and did not involve an unreasonable application of clearly established federal law.

## IV. Conclusion

For the reasons set forth above, McDonald's petition for a writ of habeas corpus is denied. A certificate of appealability shall not issue, as petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253 (c)(2); Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED

Dated: Brooklyn, New York
March 8, 2010

/s/
DORA L. IRIZARRY
United States District Judge